DOGRA LAW GROUP PC
SHALINI DOGRA, SBN 309024
*shalini@dogralawgroup.com*
2219 Main Street, Unit 239
Santa Monica, CA 90405
Telephone: (747) 234-6673
Facsimile: (310) 868-0170
*Attorneys for Named Plaintiffs and Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| ALAIN MICHAEL, an individual on behalf of himself all others similarly situated; LYNETTA HUFFMAN, individually and on behalf of all others similarly situated; KAREN ASHER, on behalf of herself and all other similarly situated | Case No: |
| | **PLAINTIFFS' CLASS ACTION COMPLAINT** |
| | 1. COMMON LAW FRAUD |
| Plaintiffs, | 2. INTENTIONAL MISREPRESENTATION |
| v. | 3. NEGLIGENT MISREPRESENTATION |
| NUTRISHUS BRANDS, INC., a Georgia Corporation; and DOES 1 through 50, Inclusive, | 4. UNJUST ENRICHMENT |
| | 5. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.* |
| Defendants. | 6. VIOLATION OF THE FALSE ADVERTISING LAW ("FAL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *et seq.* |
| | 7. VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL"), CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 *et seq.* |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Alain Michael (Plaintiff Michael"), Plaintiff Lynetta Huffman ("Plaintiff Huffman") and Plaintiff Karen Asher ("Plaintiff Asher" and collectively hereinafter

"Plaintiffs") , by and through their attorneys, brings this action on behalf of themselves and all other similarly situated against Nutrishus, Inc. ("Defendant Nutrishus"), and Does 1 through 50. Plaintiffs hereby allege, on information and belief, except as those allegations which pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

## <u>NATURE OF THE ACTION</u>

1.     To capitalize on the premium price consumers are willing to pay for forms of sweeteners and syrups that purportedly lack the harmful side effects of traditional sugar, Defendant Nutrishus intentionally makes false and misleading representations about its "RxSugar®" product line, which includes three types/flavors of syrups and liquids: (i) "organic liquid sugar"; (ii) 'organic maple syrup": and (iii) "organic chocolate syrup." (hereinafter collective referred to as "the Products.").

2.     Defendant Nutrishus deceive consumers about their sugar substitutes to take advantage of diabetics, as well as individuals who are seeking out healthier forms of desserts and sweet foods. Aware that consumers place a higher value on alternatives to sugar that can sweeten food without the negative impact that is typically associated with sugar, including weight gain and exacerbation of diabetes, Defendants deliberately make false and misleading statements about the nutritional value and health benefits of their Products

3.     In reality, none of these claims about the Products are true because Defendants' have based them on a manipulated and incorrect serving sizes.  Specifically, Defendants have predicated their marketing scheme for the Products on a serving size that is lower than the reference amount that is customarily consumed"(RACC) required by federal and state law. If Defendants calculated the Products' nutritional value on the actual serving size that was mandated by law, then none of the claims on the Products' front label and packaging would be true.  By using a serving size that is lower than the required RACC, Defendants purposely mislead consumers into thinking that the Products lack the harmful side effects of sugar, and thereby increase profits at the

PLAINTIFFS' CLASS ACTION COMPLAINT

expense of unsuspecting individuals. Additionally, Defendants further misbrand the Products and deceive consumers by consistently perpetuating misleading and false health and structure/function claims about the Products.

4.     At all relevant times, Defendants packaged, advertised, marketed, distributed and sold the Products to consumers at retail store locations throughout California and the United States based on the misrepresentation that the Products were "0 calories," "0 net carbs," or "0 glycemic." In reality, the Products do not confer any of these purported nutritional and health benefits to consumers. The Products actually are not zero calorie, zero net carbs or zero glycemic.

5.     Reasonable consumers rely on product labelling in making their purchasing decisions.  When a consumer sees a substitute sweetener or syrup labelled as " "zero glycemic," "zero calories," "zero net carbs,"  s/he reasonably expects the food item to be harmless and lack the health dangers typically associated with sugar.  In reliance on Defendants' misleading marketing and deceptive advertising practices for the Products, Plaintiffs and similarly situated class members reasonably thought they were purchasing a substitute sweetener alternative to sugar and syrup that provided benefits and value for the human body. In fact, neither Plaintiffs nor any of the member of the putative class received  any of the health benefits, nutritional value or food composition they reasonably thought they were buying.

6.     Plaintiffs and other consumers purchased the Products because they reasonable believed, based on Defendants' packaging and advertising that the Products provided certain health benefits and helped avoid particular physiological harms.  Had Plaintiffs and other consumers known that the Products actually lacked the nutritional value and health benefits that were advertised on the front labels and packages, they would not have purchased the Products or would have paid significantly less for them. As a result, Plaintiffs and other similarly situated class members have been deceived and suffered economic injury.

7.     Defendants' labelling, marketing and advertising uniformly involves multiple false and misleading statements, as well as material omissions of fact, concerning the Products that have injured Plaintiffs and the class by tricking them into buying a sugar substitute product and alternative sweetener that is entirely different from what they sought at the time of purchase.

8.     Based on the fact that Defendants' advertising misled Plaintiffs and all others like them, Plaintiffs bring this class against Defendants to seek reimbursement of the premium they and the Class Members paid due to Defendants' false and deceptive representations about the serving size, health impact and nutrient content levels of the Products.

9.     Plaintiffs seek relief in this action individually and on behalf of all purchasers of the Products statewide in California for common law fraud, intentional misrepresentation negligent misrepresentation, and unjust enrichment. Additionally, Plaintiffs seek relief in this action individually and on behalf of all purchasers of the Products in California for violation of the California Bus. & Prof. Code §§17500, *et seq*., California's False Advertising Law ("FAL"), and Bus. & Prof. Code §§17200, *et seq*., California's Unfair Competition Law ("UCL").

## **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act,  because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and, at least one class member is a citizen of a state different from Defendant Nutrishus. Additionally, more than two-thirds of the members of the class reside in states other than those in which Defendants are citizens and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

11.     The Court has personal jurisdiction over Defendant Nutrishus pursuant to Cal. Code Civ. P. § 410.10, as a result of Defendant Nutrishus' substantial, continuous and systematic contacts with the State, and because Defendant Nutrishus has purposely

availed itself to the benefits and privileges of conducting business activities within the State.

12.     Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Moreover, Defendant Nutrishus distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

13.     Plaintiff Michael is a resident of California, and lives in Los Angeles County.  Plaintiff Asher is a resident of Merced County. Plaintiff Huffman is a resident of Los Angeles County.

14.     Defendant Nutrishus is a corporation headquartered in the State of Georgia, with its principal place of business at 1450 West Peachtree Street NW #200, PMB 14642, Atlanta, Georgia, 30309-2955. Defendant Nutrishus manufactures, mass markets, and distributes the Products throughout California and the United States.

15.     Plaintiffs are informed and believe, and based thereon allege that at all times relevant herein each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

16.     Plaintiffs reserve their right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants Nutrishus who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.     Consumers often purchase sugar and syrup substitutes to avoid the harmful side effects of traditional granulated white table sugar. The trend towards sugar replacements and alternative forms of sweeteners has grown as more studies continue to emerge about the dangers of sugar.  Additionally, especially as diabetes rates increase

throughout the nation, the demand for sugar replacements is swelling, so that diabetics can eat sweet foods without worsening their condition. Defendants knew or had reason to know that consumers would find the challenged attributes important in their decision to purchase the Products, as indicated by the fact that Defendants repeatedly emphasize the advertised claims prominently on the front labels of the Products' packaging in capital letters and an eye-catching font that quickly garners a consumer's attention. Defendants consistently advertise the Products as "0 Calories," "0 Net Carbs" and "0 Glycemic." These misrepresentations are further enforced by the fact that the Products' front packaging bears a "keto certified" seal and displays statements about the Products being "safe for diabetics."  However, Defendants' labelling and marketing scheme for the Products is blatantly false. The Products are not actually zero calories, zero net carbs, nor zero glycemic.



PLAINTIFFS' CLASS ACTION COMPLAINT

18.   21 U.S.C. § 343 states that a food product is misbranded if "its labelling is false or misleading in any manner, with "labelling" defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers or (2) accompanying such article[1]."  Similarly, under California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6, §110660, "Any food is misbranded if its labelling is false or misleading in any particular." Additionally, pursuant to the Nutrition Labelling and Education Act ("NLEA"), the FDA deems a food product misbranded if it lacks appropriate nutritional labelling.  *See* 21 U.S.C. § 403(q).

19.   As part of the FDA's labelling requirements, a food's nutritional facts and content disclosures must be based on a serving size that reflects an amount that is "customarily consumed."  *See* 21 U.S.C. § 343(q)(1)(A)(i). The FDA has established distinct "reference amount customarily consumed (RACC)" for certain foods, whereby a food producer must use a minimum serving size equal to the FDA's determined RACC to calculate its corresponding food item's nutritional values. *See* 21 C.F.R. §§101.9(b)(2) and 101.9(b)(6).  A food manufacturer's failure to adhere to the FDA's regulated RACC constitutes unlawful misbranding. *See* 21 U.S.C. § 403(q). Furthermore, Chapter 4 of California's Sherman Law, §§ 110290 incorporates the NLEA and the FDA's prohibition on false or misleading nutritional content and RACC statements.

20.   The FDA has determined an explicit RACC level for the Products. The agency has also expressed a preference to base serving sizes on actual consumption habits. *See* "Dietary Guidelines for Americans: U.S. Department of Agric. And U.S. Dep't of Health and Human Services (7th ed. 2010) at 27-9. Likewise, the NLEA requires that serving sizes reflect the amounts people actually eat. Fortin, Neal, "*Food Regulation Law, Science, Policy and Practice*", p.68 (2017). Under 21 C.F.R. §101.12, the RACC for syrup replacements such as the Products is two tablespoons. Hence, Defendant Nutrishus must base the Products' nutritional content values on a minimum serving size of two tablespoons. Yet, as made clear by the Products' back panel, Defendant Nutrishus

---

[1] *See* 21 U.S.C. § 321 (m)

has relied on a serving size of one tablespoon, one-half of the minimum amount required by the FDA. By using an amount that is one-half of the legally required serving size minimum, Defendant Nutrishus cements the foundation for the false and misleading claims it systematically advertises on the Products' front labels. If Defendant Nutrishus followed the FDA's parameters for the RACC of syrups and used the agency's mandatory minimum serving size to ascertain the Products' nutritional values, then the Products would not actually be "0 calories," "0 net carbs," or "0 glycemic," as boldly advertised on the Products' front panel. For example, the FDA limits "zero calorie" claims to food items that contain less than five calories per serving. *See* 21 C.F.R. § 101.9(c)(1). Here, two tablespoons of the Products would have more than five calories and not meet the FDA's qualifications for the "zero calorie" labels. Hence, by manipulating the Products' serving size, Defendant Nutrishus has deceived consumers about their health benefits and risks.

21.   Indeed, the very labelling and packaging changes that Defendants implemented after being apprised of their CLRA violations, as detailed in this Complaint, demonstrate the Products' inaccurate labelling scheme. As indicated by comparison between Products' pre-September 2021 and post-September 2021 packaging, somehow one tablespoon of the Products has zero calories and ten grams of carbohydrates. Yet, two tablespoons of the same formulation has ten calories and twenty-grams of carbohydrates. Hence, when Defendants used the incorrect serving size and manipulated the RACC, they falsely represented and underreported the Products' calorie count and carbohydrate levels.

22.   Notably, the Ninth Circuit has affirmed that "technically correct labels can be misleading." *Bruton v. Gerber Prods. Co*., No. 15-15174, 2017 WL 1396221 (9th Cir. Apr. 19, 2017). Thus, even if the Products' front labels make technically true statements about one tablespoon of the Products, Defendants are still liable for deceptive advertising. Furthermore, Defendants know that consumers will foreseeably devour more than one tablespoon of the Products and end up digesting a volume that lacks all

PLAINTIFFS' CLASS ACTION COMPLAINT

the advertised claims, especially when the Products' packaging touts statements like "clean," "safe for diabetics" and "plant-based." Aside from the fact that the FDA has set the RACC for food items like the Products at twice as much as Defendants' serving size for the Products, Defendants themselves encourage consumers to use more than one table spoon of the Products with tactics such as covering the Products' front label and bottlecap design with eye-catching all cap bold claims like "REAL. HEALTHY." Therefore, Defendants have sufficient notice that individuals will consume multiple servings of the Products, and foreseeably eat amounts of the sugar substitute syrups that are not "zero calories, "zero glycemic," or "zero net carbs."

23.    Under the NLEA, the FDA deems a food product misbranded if it advertises nutrient content claims[2] that have not been defined by the FDA, or fall outside the FDA's established definitions. *See* 21 U.S.C. §§ 343(Q) and (R); and *See* 21 C.F.R. § 101.13. Similarly, Article 6 of California's Sherman Law, §§ 110665 and 110670 adopt the NLEA and the FDA's prohibition on false or misleading nutrient content claims. Here, the Products' front labels exhibit at least two nutrient content claims: "zero calorie," and "zero net carbs." Both of these claims are false because they are based on an incorrect serving size and illegitimate RACC.

24.    Structure or function claims are claims that refer to a structure or function of the body (hereinafter referred to as "structure/function claims"). Structure/function claims describe a food ingredient's role in affecting or maintaining normal human structure or body functions. Under the FDCA, food is misbranded if its labelling contains false or misleading structure or function claims. California's Sherman Law, Article 6, §110670, imposes the same prohibition on false and misleading structure/function claims. The Products' front labels clearly advertise "0 Glycemic" in discrete, visible bold letters. This claim, which reflects glycemic index, constitutes a structure/function claim because it refers to the structure and function of blood sugar levels. The "zero glycemic"

---

[2] *See* FDCA §403(r)(2)(C), which defines nutrient content claims as "any direct statement about the level or range of a nutrient in the food," or " describes a food or an ingredient in a manner that suggests that a nutrient is absent or present in a certain amount."

claim tells a consumer that eating the Products will not raise blood sugar levels, thereby providing information about the Products' impact on a structure and function of the human body. However, in reality, the Products' structure/function claims are false and misleading because the syrup replacements' composition does not result in a zero glycemic index. Here, despite diligent investigation and research efforts, no evidence was found that any of the Products' ingredients result in zero glycemic levels or have a relationship to any of the health benefits represented on the Products' front labels. Accordingly, it is reasonable to conclude that Defendants do not possess any substantiation for the structure/function claims it has advertised on the Products. Defendants' "Zero Glycemic" health claim is unlawfully deceptive because it misleads consumers to conclude that the Products are healthy, especially for diabetics Here, Defendant Nutrishus advertises and emphasizes a collection of front label claims on the Products that altogether lead a reasonable consumer to think that the Products are good for individuals and that the Products confer particular benefits for diabetics. When a person, especially one who has diabetes and who must monitor her sugar levels, sees the claims "0 glycemic," "0 calories," and "0 net carbs" in conglomeration, especially when presented with statements about "safe for diabetics," she will reasonably think that the food product is good for her and a liquid sugar or syrup that diabetics can safely use. Moreover, she will reasonably believe that she can consume the substitute syrup without side effects of weight gain, diabetes, or diabetes aggravation. In reality, the Products are not free from any of these dangers. As clarified in the discussion above, the Products contain carbohydrates, and likely have an abundance of calories as well. Furthermore, the Products likely cause increases in blood sugar levels and are not genuinely "zero glycemic," thereby carrying serious risks for diabetics. In reality, there is no scientific evidence that proves that the Products have a zero glycemic value, or prevent blood sugar spikes. Notably, some studies have indicated that sugar substitutes like the Products can have the same effect as sugar on the human body, especially in terms of triggering increases in appetite. Lustig, Robert, " *Effects of Sweeteners on Glucose, Insulin, and*

PLAINTIFFS' CLASS ACTION COMPLAINT

*Energy Intake*." Int'l J. of Obesity (2005). Additionally, these studies have concluded that sweetening and sugar substitutes like allulose do not have any unique or special benefits over sugar. In other words, these studies demonstrate that the purported health benefits that Defendants advertise on the Products' front labels are unsubstantiated, false and deceptive. Furthermore, these studies show that Plaintiffs are not relying on "lack of substantiation" legal theories here. On the contrary, Plaintiffs here can survive a "lack of substantiation "challenged because they have cited studies that show the deceptive nature of each of Defendants' advertised claims. *Bronson v. Johnson & Johnson, Inc.*, 2013 U.S. Dist. LEXIS 54029, at *22 (N.D. Cal. Apr. 16, 2013).

25.     Defendants' labelling and advertising of the Products violate the mandates of the Federal Food, Drug and Cosmetics Act, the correlative mandates of the Sherman Law, and are unfair and deceptive in violation of the California Civil Code § 1770.

26.     Plaintiffs purchased units of the Products in reliance upon the labelling and advertising of the Products' above-detailed nutrient content and nutritional value claims, without knowledge of the fact that all the statements about the Products' purported advantages were actually false. Defendants knows or has reason to know that consumers would find the challenged attributes important in their decision to purchase the Products, as indicated by the fact that Defendants repeatedly emphasizes the advertised claims prominently on the front labels of the Products' packaging in capital letters and an eye-catching font that quickly garners a consumer's attention. Consequently, because the Products have deceptive serving sizes, misleading nutritional content reporting and fail to provide the advertised health benefits, consumers are not receiving the benefit of their bargain.

27.     Plaintiffs consumed units of the Products as intended and would not have purchased them if they had known that the advertising as described herein was false, misleading and deceptive. Plaintiffs suffered injury in fact and are entitled to restitution damages in an amount to be determined at trial. It is beyond reproach that the Products advertise blatantly inaccurate nutritional panels, as well as false and misleading nutrient

content claims to prey on diabetics and trick consumers. Yet, Defendants have systematically and consistently continued to make false allegations about the nutritional components and health benefits of the Products on the sugar and syrup replacements' front labels. Reasonable consumers rely on product labelling in making their purchasing decisions. When a consumer sees a substitute sweetener labelled as " "0 glycemic," "0 calories," "0 net carbs," especially in combination with statements that emphasize safety for diabetics, she reasonably expects the sugar replacement to be harmless and lack many of the health dangers typically associated with sugar. In reliance on Defendants' misleading marketing and deceptive advertising practices of the Products, Plaintiffs and similarly situated class members reasonably thought they were purchasing a food product that provided benefits and value for the human body. In fact, neither Plaintiffs nor any of the member of the putative class received any of the health benefits, nutritional value or food composition they reasonably thought they were buying. Defendants have no reasonable basis for labelling, advertising, marketing and packaging the Products as being beneficial to health or an innocuous liquid sugar and syrup substitute that is especially safe for diabetics. As a result, consumers are consistently misled into purchasing the Products for the commonly known and/or advertised benefits and characteristics when in fact no such benefits could be conferred by the Products.

28.     Defendants' marketing, labelling, and packaging of the Products are designed to, and do in fact, deceive, mislead and defraud consumers. Defendants have no reasonable basis for labelling, advertising, marketing and packaging the Products as being beneficial to health or an innocuous sugar and syrup substitutes that are especially safe for diabetics. As a result, consumers are consistently misled into purchasing the Products for the commonly known and/or advertised benefits and characteristics when in fact no such benefits could be conferred by the Products. The malicious actions taken by Defendants caused significant harm to consumers. Plaintiffs and similarly situated class members who purchased the Products because they reasonably believed, based on Defendants' marketing, packaging, labelling and advertising schemes, that the Products

were in fact zero net carbs, zero glycemic, zero calorie, and safe for diabetics.  Thus, Plaintiffs were economically harmed by Defendants' misbranding, false labelling, deceptive marketing and misleading packaging of the Products. The value of the Products that Plaintiffs actually purchased and consumed was materially less than its value as misrepresented by Defendants.

29.   Plaintiff Michael purchased at least one unit of the Products' "maple Syrup" flavor  from a Los Angeles-based supermarket in late 2020 or early 2021, before Defendants modified the Products' deceptive labelling scheme.  Plaintiff Huffman bought at least one unit of the Products' "chocolate syrup" flavor from a Los Angeles-based "Walgreens" store location in 2019 or 2020, when the Products still displayed the false advertisements detailed herein. Plaintiff Asher bought units of the Products' "maple syrup" and chocolate flavors throughout the time period of 2020 to 2022. Plaintiff Asher made her purchases of the Products online, as well as at retail supermarket locations in Merced County, and bought units of the Products that advertising Defendants' deceptive marketing scheme and representations as described in this Complaint.

30.   Plaintiffs purchased units the Products throughout California during the relevant time period.  Plaintiffs bought and consumed the Products because, based on Defendants' marketing and labelling scheme, they believed that the Products were in fact zero net carbs, zero glycemic, zero calorie, and safe for diabetics  Plaintiffs purchased the Products in reliance upon the nutritional and health benefits that Defendants advertised and marketed throughout the Products' labelling, and packaging, without knowledge of the fact that the Products perpetuated a misbranded RACC, and that they were not actually zero net carbs, zero glycemic, zero calorie, or safe for diabetics. Plaintiffs consumed the Products as intended and would not have purchased units the Products if they had known that the advertising as described herein was false, misleading and deceptive. During the time when they were purchasing and consuming the Products, Plaintiffs did not take steps to verify the Products' components or nutrient levels. Reasonable consumers such as Plaintiffs would not have considered it necessary to verify

the clear message conveyed by Defendants' labelling, advertising, marketing and packaging of the Products. Plaintiffs would consider purchasing the Products again if the labelling were accurate.

## **RULE 9(B) ALLEGATIONS**

31.   Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirement of Rule 9(b) by establishing the following elements with sufficient particularity:

32.   WHO: Defendants made material misrepresentations and omissions of fact in the labelling, packaging and marketing of the Products.

33.   WHAT: Defendants made material misrepresentations and omissions of fact by labelling, packaging and marketing the Products as "zero carb," "zero glycemic," and "zero net carbs"  and by misbranding the Products with a prohibited serving size. Defendants made these claims with respect to the Products even though the Products were not in fact zero calories, zero glycemic, zero net carbs, nor meet the requirements to make such claims.  Defendants' misrepresentations and omissions were material because a reasonable consumer would not have purchased or paid as much for the Products if he or she knew that they contained false representations.

34.   WHEN: Defendants made the material misrepresentations and omissions detailed herein continuously throughout the Class Period.

35.   WHERE: Defendants' material misrepresentations and omissions were made, *inter alia*, on the labelling of the Products, on Defendants' website, and throughout Defendants' various other marketing and advertising scheme for the Products.

36.   HOW: Defendants made written misrepresentations and failed to disclose material facts on the labelling and packaging of the Products and on their website and other advertising.

37.  <u>WHY</u>: Defendants engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase and/or pay a premium for the Products based on the belief that they actually were zero net carbs, zero calories and zero glycemic.  Defendants profited by selling the Products to millions of unsuspecting consumers statewide in California, as well as nationwide.

## **CLASS ACTION ALLEGATIONS**

38.  Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3). Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated statewide in California. Plaintiffs seek to represent a class a comprised of all persons in California who, on or after September 10, 2017 in California, (the "Class Period")  purchased the Products for household use and not for resale or distribution.

39.  The proposed class consists of all consumers who purchased the Products in the State of California for personal use and not for resale, during the time period September 10, 2017, through the present. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Products, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

40.  This action is properly brought as a class action for the following reasons:

(a) The members in the proposed class are so numerous that individual joinder of all members is impracticable and disposition of the class members' claims in a single class action will provide substantial benefits to the parties and Court, and is in the best interests of the parties and judicial economy.

(b) Plaintiffs stand on equal footing with and can fairly and adequately protect the

interests of all members of the proposed class. All units of the Products bear the misbranded RACC and the "0 Carbs," "0 glycemic," and "0 calorie" labelling. Defendants' misbranded serving size, as well as their untrue statements and "0 Carbs," "0 glycemic," and "0 calorie" deceptive marketing occur on the packaging of the units of Products themselves. Thus, every individual consumer who purchases the Products is exposed to the false advertising. Defendants have, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action. Further, the class definition itself describes a set of common characteristics sufficient to allow a prospective plaintiff or class member to identify himself or herself as having a right to recover based on the description.

(c) Plaintiffs will fairly and adequately represent and protect the interests of the class, have no interest incompatible with the interests of the class, and have retained counsel competent and experienced in class actions, consumer protection, and false advertising litigation, including within the context of food and the food industry. Plaintiffs' attorneys have the experience, knowledge, and resources to adequately and properly represent the interests of the proposed class. Plaintiffs have no interests antagonistic to those of other proposed class members, and they have retained attorneys experienced in consumer class actions and complex litigation as counsel.;

(d) Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is so small, that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the party or parties opposing the class. Further, individual cases would be so numerous as to inefficiently exhaust judicial

1   resources. Plaintiffs seek damages and equitable relief on behalf of the proposed

2   class on grounds generally applicable to the entire proposed class.;

3   (e) Questions of law and fact common to the class predominate over any questions

4   affecting only individual class members. There are questions of law and fact

5   common to the proposed class which predominate over any questions that may

6   affect particular class members.  Such questions of law and fact common to

7   Plaintiffs and the class include, without limitation:

      i.   Whether Defendants were unjustly enriched by their conduct;

      ii.   Whether Class Members suffered an ascertainable loss as a result
of Defendants' misrepresentations;

      iii.   Whether, as a result of Defendants' misconduct as alleged herein,
Plaintiffs and the Class Members are entitled to restitution,
injunctive relieve and/or monetary relief, and if so, the amount and
natural of such relief;

      iv.   Whether Defendants made any statement they knew or should have
known were false or misleading;

      v.   Whether Defendants maintained a longstanding marketing policy,
practice and strategy of labelling, advertising and selling the
Products with the misbranded RACC and serving size, and "0
Carbs," "0 glycemic," and "0 calorie" claims, even though the
Products failed to confer any of these purported nutritional contents
or health benefits.

      vi.   Whether the utility of Defendants' practices, if any, outweighed the
gravity of the harm  to their victims;

      vii.   Whether Defendants' conduct violated public policy, included as
declared by specific constitutional, statutory, or regulatory
provisions;

viii.   Whether Defendants' conduct or any of their practices violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.,* the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.,* The Federal Food, Drug and Cosmetics Act, 28 U.S.C. §§ 301 *et seq.* and its implementing regulations, 21 C.F.R. §§ 101 *et seq.,* the Cal. Health & Safety Code §§ 109875 et seq., or any other regulation, statute or law;

ix.   Whether Defendants represented that the Products have characteristics, uses, or benefits which they do not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

x.   Whether Defendants represented that the Products are of a particular standard, quality, or grade, when they were really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

xi.   Whether Defendants advertised the Products with the intent not to sell them as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

xii.   Whether Defendants represented that the Products have been supplied in accordance with a previous representation when they have not, within the meaning of Cal. Civ. Code § 1770(a)(16);

xiii.   The proper equitable and injunctive relief;

xiv.   The proper amount of restitution or disgorgement;

xv.   The proper amount of reasonable litigation expenses and attorneys' fees;

(f) Plaintiffs' claims are typical of the claims of the members of the proposed class. Plaintiffs and all class members have been injured by the same practices of Defendants.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all class members and are based on the same legal theories. Plaintiffs' claims are typical of class members' claims, as they are based

on the same underlying facts, events and circumstances relating to Defendants'
conduct.;

(g) As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P.
23(a), (b)(1), (b)(2) and (b)(3), and may be appropriate for certification "with
respect to particular issues" under Rule 23(b)(4).

**FIRST CAUSE OF ACTION**

**Common Law Fraud**

41.    Plaintiffs re-allege and incorporate by reference the allegations contained in
the paragraphs above as if fully set forth herein.

42.    Plaintiffs bring this claim individually and on behalf of the members of their
proposed Class.

43.    As discussed above, Defendants provided Plaintiffs and the Class Members
with false or misleading material information and failed to disclose material facts about
the Products, including but not limited to the fact that they were based on an intentionally
lowered serving size and unlawful RACC, and that the Products were not actually zero
net carbs, zero glycemic, or zero calorie.

44.    The misrepresentations and omissions made by Defendants, upon which
Plaintiffs the Class Members reasonably and justifiably relied, were intended to induce
and actually induced Plaintiffs and Class Members to purchase the Products.

45.    The fraudulent actions of Defendants caused damage to Plaintiffs and Class
Members, who are entitled to damages and other legal and equitable relief as a result.

**SECOND CAUSE OF ACTION**

**Intentional Misrepresentation**

46.    Plaintiffs re-allege and incorporate herein by reference each and every
allegation set forth above.

47.    Plaintiffs bring this claim individually and on behalf of the members of their
proposed Class.

48. Defendants represented to Plaintiffs and other class members that important facts were true. More specifically, Defendants represented to Plaintiffs and the other class members through their advertising and labelling scheme for the Products, including that the Products were zero calories, zero glycemic, and zero net carbs.

49. Defendants' representations were false. Defendants knew that the misrepresentations were false when they made them, or Defendants made the representations recklessly and without regard for their truth. Defendants intended that Plaintiffs and other class members rely on the representations.

50. Plaintiffs and the other class members reasonably relied on Defendants' representations.

51. Plaintiffs and the other class members were financially harmed and suffered other damages, including but not limited to, emotional distress. Defendants' misrepresentations and/or nondisclosure were the immediate cause of Plaintiffs and the other class members purchasing the Products. Plaintiffs' and the other class members' reliance on Defendants' representations was the immediate cause of the financial loss and emotional distress (of the type that would naturally result from being led to believe that the food product you are purchasing and consuming is safe for diabetics when in fact it does not) sustained by Plaintiffs and the other class members.

52. In absence of Defendants' misrepresentations and/or nondisclosure, as described above, Plaintiffs and the other class members, in all reasonable probability, would not have purchased the Products.

## **THIRD CAUSE OF ACTION**

### **Negligent Misrepresentation**

53. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

54. Plaintiffs bring this claim individually and on behalf of the members of their proposed Class.

PLAINTIFFS' CLASS ACTION COMPLAINT

55.   As discussed above, Defendants represented the Products as in fact zero net carbs, zero glycemic, and  zero calorie, but failed to disclose that the Products actually lacked these advertised nutritional compositions and health advantages. Likewise, Defendants failed to disclose that they  perpetuated an unlawful serving size and misbranded RACC. Defendants had a duty to disclose this information.

56.   At the time Defendants made these misrepresentations, Defendants knew or should have known that these misrepresentations were false or made them without knowledge of their truth or veracity.

57.   At an absolute minimum, Defendants negligently misrepresented or negligently omitted material facts about the Products. The negligent misrepresentations and omissions made by Defendants, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products. Plaintiffs and Class Members would not have bought the Products if they had known the true facts.

58.   The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

59.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.   Plaintiffs bring this claim individually and on behalf of the members of their proposed Class.

61.   Plaintiffs and Class Members conferred benefit on Defendants by purchasing the Products.

62.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because the Products are misbranded due to Defendants' unlawful serving size, and lack the traits of being zero

net carbs, zero glycemic, and zero calorie. Defendants' false advertising and deceptive advertising scheme for the Products resulted in purchasers being denied the full benefit of their purchase because they did not purchase a product that was actually zero net carbs, zero glycemic, or zero calorie.

63.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

## FIFTH CAUSE OF ACTION

### Violation of Cal. Civ. Code §§1750, *et seq*.

64.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

65.   Plaintiffs bring this claim individually and on behalf of the members of their proposed Class.

66.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. ("CLRA"). The CLRA prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sales of any goods or services to consumers. *See* Cal. Civ. Code §1770.

67.   The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

68.   Defendants are each a "person" under the CLRA. Cal. Civ. Code §1761 (c).

69.   Plaintiffs and the putative Class Members are "consumers" under the CLRA. Cal. Civ. Code §1761 (d).

70.   The Products constitute a "good" under the CLRA. Cal. Civ. Code §1761 (a).

71.     Plaintiffs and the putative Class Members' purchases of the Products within the Class Period constitute "transactions" under the CLRA. Cal. Civ. Code §1761 (e).

72.     Defendants' actions and conduct described herein reflect transactions that have resulted in the sale of goods to consumers.

73.     Defendants' failure to label the Products in accordance with California labelling requirements constitutes an unfair, deceptive, unlawful and unconscionable commercial practice.

74.     Defendants' actions have violated at least seven provisions of the CLRA, including §§ 1770(a)(1), 1770 (a)(2), 1770 (a)(3)1770(a)(5), 1770(a)(7), 1770 (a)(9) and 1770(a)(16).

75.     As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labelled and marketed Products, which they would not have paid had the Products been labelled correctly, or in the form of the reduced value of the Products relative to the Products as advertised and the retail price they paid.

76.     Pursuant to § 1782 of the CLRA Plaintiffs apprised Defendants in writing of the particular violations of § 1770 of the CLRA, and demanded Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and to give notice to all affected consumers of their intent to do so. On or about September 10, 2021, a notice and demand letter was sent to Defendants, notifying Defendants of their violations of the CLRA and demanding that within 30 days, Defendants remedy the unlawful, unfair, false, and/or deceptive practices complained of herein. Plaintiffs  advised Defendants that if they refused the demand, Plaintiffs would seek monetary damages for themselves and all others similarly situated, as well as injunctive relief, restitution, and any other relief the Court may deem just and proper. Defendants have failed to comply with the letter. Consequently, pursuant to California Civil Code §1782, Plaintiffs, on behalf of themselves and all other members of the Class,

seeks compensatory damages and restitution of any ill-gotten gains due to Defendants' acts and practices that violate the CLRA.

77.   Defendants have failed to rectify or agree to rectify at least some of the violations   associated with actions detailed above and give notice to all affected consumers within 30 days of receipt of the Cal. Civ. Code § 1782 notice.  Thus, Plaintiffs seeks actual damages and punitive damages for violations of the Act.

78.   In addition, pursuant to Cal. Civ. Code §1780(a)(2), Plaintiffs are entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770.

79.   Plaintiffs and Class Members are also entitled to recover attorneys' fees, costs, expenses, disbursements, and punitive damages pursuant to Cal. Civ. Code §§ 1780 and 1781.

80.   Notably, shortly after being notified about its CLRA violations described herein,  and apprised of potential litigation, Defendant Nutrishus changed the Products' labelling and packaging scheme. These modifications included the fact that Products' nutritional panel was amended to reflect a serving size of two tablespoons, the RACC established by the FDA, in place of Defendant Nutrishus' deceptive RACC amount. Moreover, Defendant Nutrishus conspicuously omitted the Products "safe for diabetics" claims   after   September   2021.     Clearly,   Defendant   Nutrishus   changed   its misrepresentations because of Plaintiffs' instant litigation.  Plaintiffs' lawsuit motivated Defendant Nutrishus to voluntarily provide one of the forms injunctive relief sought in this litigation. Furthermore, as affirmed by the California Supreme Court, Plaintiffs here are already "successful" within the meaning of Cal. Code of Civ. Proc. Section 1021.5 because their lawsuit was a catalyst motivating Defendant Nutrishus to provide the "primary relief" sought, Plaintiffs' lawsuit had "merit" and achieved its catalytic effect by "threat of victory, not by dint of nuisance and threat of expense," and since Plaintiffs reasonable attempted to settle the litigation prior to filing the suit.  See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal. 4th 553; see also *Tipton-Whittingham v. City of*

1    *Los Angeles* (2004) 34 Cal. 4th 604. Likewise, Plaintiffs are already entitled to attorneys'

2    fees here because "[Defendant Nutrishus] change[d] [its] behavior substantially because

3    of, and in the sought by [Plaintiffs]."  *Skinner v. Ken's Foods, Inc.* (2020) 53 Cal. App.

4    5th 938, 946 (citing *Folsom v. Butte County Assn. of Governments* (1982) 32. Cal. 3d

5    668, 685).

6                              **<u>SIXTH CAUSE OF ACTION</u>**

7        **Violation of California Business & Professions Code §§ 17500, *et seq*.**

8        81.    Plaintiffs re-allege and incorporate by reference the allegations contained in

9    the paragraphs above as if fully set forth herein.

10       82.    Plaintiffs bring this claim individually and on behalf of the members of their

11   proposed Class.

12       83.    Defendants engaged in unfair and deceptive acts and practices, in violation

13   of the California Business and Professions Code § 17500 *et seq*., by marketing and/or

14   selling the Products without disclosure of material fact about the Products. These acts

15   and practices, as described above, have deceived Plaintiffs and other class members,

16   causing them to lose money as herein alleged and have deceived and are likely to deceive

17   the consuming public, in violation of those sections. Accordingly, Defendants' business

18   acts and practices, as alleged herein, have caused injury to Plaintiffs and the other class

19   members.

20       84.    As detailed above, Defendants had a duty to disclose the Products'

21   misbranded serving size value, as well as the fact that the Products' actually were not

22   zero net carbs, zero glycemic, or zero calorie, because this information reflected  material

23   facts of which Defendants had exclusive knowledge. Defendants actively concealed

24   these material facts and Defendants made partial representations about the Products but

25   suppressed some material facts. Defendants' misrepresentation and/or nondisclosure of

26   the material fact was the immediate cause of Plaintiffs and the other class members

27   purchasing the Products. In the absence of Defendants' misrepresentation and/or

28   nondisclosure of facts, as described above, Plaintiffs and other class members would not

have purchased the Products.

85.   Plaintiffs and the other class members are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices, and enjoining Defendants to cease and desist from engaging in the practices described herein.

## SEVENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq*.

86.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

87.   Plaintiffs seek to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period September 10, 2017, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Products."

88.   The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.   "Unfair" Prong

89.   Pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid," *or* "the utility of the defendant's conduct is outweighed by the gravity of the harm to the alleged victim.

90.   Defendants' actions of engaging in false and deceptive advertising, marketing, labelling, and of the Products do not confer any benefit to consumers.

91.   Defendants' actions of advertising, marketing, labelling, and the Products in a false, deceptive and misleading manner cause injuries to consumers because the

consumers do not receive a syrup alternative commensurate with their reasonable expectation.

92.   Defendants' actions of advertising, marketing, labelling, and the Products in a false, deceptive and misleading manner cause injuries to consumers because the consumers do not receive the benefits they reasonably expect from the Products.

93.   Defendants' actions of advertising, marketing, and labelling the Products in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up consuming a syrup alternative that is of a lower quality than what they reasonably were expecting and sought.

94.   Defendants' actions of advertising, marketing, and labelling the Products in a false, deceptive and misleading manner cause injuries to consumers because the consumers end up overpaying for the Products and receiving a syrup alternative that is less than what they expected to receive.

95.   Consumers cannot avoid any of the injuries caused by Defendants' false, misleading and deceptive labelling, advertising, and marketing of the Products.

96.   Accordingly, the injuries caused by Defendants' activity of advertising, marketing, and labelling the Products in a false, deceptive and misleading manner outweigh any benefits.

97.   Here, Defendants' conduct of advertising, labelling  and marketing the Products in a false, deceptive, and misleading manner has no utility and financially harms purchasers.  Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

98.   Defendants' labelling, marketing, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

99.   Defendants knew or should have known of their unfair conduct.

100. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of

California Business and Professions Code § 17200.

101. There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have marketed, labelled, advertised and packaged the Products truthfully, without any dishonest claims about the Products' nutrient levels and health benefits.

102. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

103. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising, labelling and marketing the Products in an untruthful manner. Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

104. As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unfair prong of the UCL because Plaintiffs and the Class would not have bought the Products if they had known the truth regarding the manipulated serving size and actual nutritional values of the Products. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products and the Products did not have the promised quality, effective, or value.

///

**B.   "Fraudulent" Prong**

105.  California Business and Professions Code § 17200, *et seq.,* considers conduct fraudulent and therefore prohibits said conduct if it is likely to deceive members of the public.

106.  Defendants' marketing, labelling, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct. As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute a fraudulent business practice in violation of California Business & Professions Code § 17200 because they are likely to, and did indeed, deceive members of the public.

107.  Defendants knew or should have known of their fraudulent conduct.

108.  There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have labelled, advertised, marketed and packaged the Products accurately.

109.  All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

110.  Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an order of this Court requiring Defendants to cease the acts of fraudulent competition alleged herein.  Likewise, Plaintiffs and the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiffs and the Class Members also seek full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

PLAINTIFFS' CLASS ACTION COMPLAINT

111.  As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the fraudulent prong of the UCL because Plaintiffs and the Class would not have bought the Products if they had known the truth regarding the nutritional content and physiological side effects the Products. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products and the Products did not have the promised quality, effectiveness, or value.

### C.    "Unlawful" Prong

112.  California Business and Professions Code § 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable."

113.  Defendants' labelling and marketing of the Products, as alleged in the preceding paragraphs, violates California Civil Code § 1750, *et. seq.,* California Business and Professions Code § 17500, *et. seq.,* California's Sherman Law, and the FDCA.

114.  Defendants'  labelling and marketing of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.  Defendants have violated the "unlawful prong" by violating, the FDCA, California's Sherman Law, as well as the State's FAL (Cal. Bus. & Prof. Code § 17500 *et seq.)* and CLRA (Cal. Civ. Code §1770 *et. seq*.).

115.  Defendants knew or should have known of their unlawful conduct.

116.  As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code § 17200.

117.  There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

118.  All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

PLAINTIFFS' CLASS ACTION COMPLAINT

course of conduct repeated on thousands of occasions daily.

119.   As a direct and proximate result of these acts, consumers have been and continue to be harmed. Plaintiffs and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendants' violation of the unlawful prong of the UCL because Plaintiffs and the Class would not have bought the Products if they had known the truth regarding nutritional components and potential harms of the Products. Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products and the Products did not have the promised quality, effectiveness, or value.

120.   Pursuant to Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs and the Class are therefore entitled to an order requiring Defendants to cease the acts of unfair competition alleged herein, full restitution of all monies paid to Defendants as a result of their deceptive practices, interest at the highest rate allowable by law and the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Civil Code Procedure §1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.   This action be certified and maintained as a class action and certify the proposed class as defined, appointing Plaintiffs representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.   For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.   That the Court awards compensatory, statutory and/or punitive damages as to all Causes of Action where such relief is permitted;

D.   That the Court awards Plaintiffs and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

E.   For an order enjoining Defendants from continuing to engage in the unlawful conduct and practices described herein;

F.   That the Court awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective remedy;

G.   That the Court awards pre-judgment and post-judgment interest at the legal rate;

H.   That the Court orders appropriate declaratory relief; and

I.   That the Court grants such other and further as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:      December 2, 2022        **DOGRA LAW GROUP PC**

By:   _____
      SHALINI DOGRA, ESQ.
      Attorneys for Plaintiffs